# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

UNITED STATES OF AMERICA : 

VS. : CR. NO. 10-00118-WS

MILES MAYNARD :

## ORDER OF DETENTION PENDING TRIAL

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I - Findings of Fact

**A.  Nature and Circumstances of the Offenses Charged.**

1. There is probable cause to believe that the defendant fired rifle rounds into an Alabama Power Substation damaging the substations's transformer and caused approximately $400,000.00 in damages in violation of 18 U.S.C. § 1366. (Destruction of an energy facility) (Doc. 1)

2. This case may be characterized as a "felony that is not otherwise a crime of violence that involves … the possession or use of a firearm" pursuant to 18 U.S.C. § 3142(f)(1)(E), thereby qualifying as a case in which the Government may seek the detention of the defendant. If convicted on this charge, the defendant faces a sentence of incarceration up to twenty years since the evidence is clear that the amount of damage inflicted by the perpetrator exceeds $100,000.00. 18 U.S.C. § 1366(a).

**B.  The Weight of the Evidence.**

3. In addition to the findings of the Grand Jury, the Government

presents a compelling case that Mr. Maynard caused serious and extensive damage to an Alabama Power Company substation by using a dangerous weapon. Part of that evidence is the incriminating statement defendant has given to law enforcement:

> I tried to shut down the substation by hand, but real[]ized I could'nt just walk right up with tools and blow myself to pieces, so I did a smart but dumb decision and shot the into what I thought was just the transformer for maybe half of North of Hollingers Island, which came out to be power everywhere, I did not have intention on making so much damage to where it looked like a group of Alkaidi (sic) blew it up!

Defendant's DH Exhibit 1, dated May 11, 2010. Clearly, the substation was damaged, which may exceed $800,000.00, by the use of a rifle to which the defendant admits.

4. The Government has also presented testimony of other events in the defendant's background that have been documented by law enforcement officers suggesting that he has a propensity for violence. First, Mr. Maynard has informed Detective Dennis Owens of the Mobile Police Department that he and his friends have established a vigilante group that dress all in black and carry guns, badges, and handcuffs. Part of their activities include the entering of homes in the Hollinger's Island community and forcing people to lay on the ground in handcuffs just like police would. Detective Owens, in fact, investigated a home invasion in August, 2008 that occurred in Hollinger's Island. The testimony of the owners was that they were accosted by four white males dressed all in black that handcuffed them and forced them to lie on the floor. Two of the assailants were reported to be wearing badges. They stole a cache of rifles and handguns as well as money. Although the evidence does not show that Mr. Maynard participated in this home invasion, the description of what happened by the victims is eerily similar to the actions in which Mr. Maynard described as activities he and his friends engage in. The similarities cannot be ignored.

5. Another investigation by Detective Owens revealed that in 2008 Mr. Maynard, close in time to the current offense, provided his friends with a gun that was used by them to fire into an occupied dwelling. One occupant was a four-year-old child.

6. In 2010 a burglary of a home on Bellwood in the Hollinger's Island community resulted in the theft of a shotgun. As part of the investigation, a search warrant was obtained for the home of the defendant's mother, which was also the defendant's residence. Upon the execution of that search warrant, the stolen shotgun was found in the defendant's vehicle. On the day of this search, when the defendant arrived at the residence, officers found that he had possession of a pistol without a permit.

7. Defendant's mother's boyfriend, Robert Echolson, gave a statement to arresting officers that the defendant had hidden weapons in the woods and it was his belief that the defendant was on his way to recover a weapon from its hiding place.

8. Defendant's mother, Susan Maynard, testified that her son was suffering from a mental illness and she had filed a petition with the Probate Judge of Mobile County to have him committed to a mental health facility without his consent. In her petition, she alleges that he is "mentally ill and as a consequence thereof poses a real and present threat of substantial harm to self and/or others; … . Defendant's Exhibit 2. She supported the petition with the following information:

> "History- 9/11/08 confessed to shooting up Substation-power station (Military Style) has been obsessed with guns … March, 2010 sleeps with loaded gun – leaves loaded guns around even when he is not home – paranoid behavior violent outbursts – puts holes in the (sic) found drugs on his person … May 2010, severe anxiety – delusive behavior and speech – ***out of control anger. I am afraid in my own home.***"

*Id*. (Emphasis added.)

### C. History and Characteristics.

9. Mr. Maynard is a twenty-two year old single male. He has never been married and has lived with his mother his entire life. Mr. Maynard is dependent on his mother to support his life style and has a work history that includes only power washing and lawn care activities as well as a one month term working at Cobalt Restaurant located in Orange Beach, Alabama.

3

10. Although he is currently enrolled at Bishop State Community College, he is attempting to join the United States Marine Corp.

11. Defendant suffers from anxiety and panic attacks. He is taking Xanax for these problems. He also reports use of marijuana.

12. His criminal history is minor for convictions but he has several pending matters for a no pistol permit, receiving stolen property third, criminal tampering first, discharge of a gun into an unoccupied building and criminal mischief first that are all pending in Mobile County.

**D. Nature and Seriousness of the Danger to Any Person or the Community if Released.**

13. It is clear that the defendant took a high-powered rifle and shot up an Alabama Power Company substation, causing approximately $800,000.00 in damages and putting all residents of Hollinger's Island in the dark. According to the evidence and to his mother, he is obsessed with guns and is acting in an unstable and threatening manner. His mother submitted to the Probate Court that her son is out of control and she is afraid in her own home.

14. Although evidence has been produced that because of the defendant's obsession with guns, his violent outbursts and unexplainable behavior, that it is believed that he suffers from a severe mental illness that so far has gone undiagnosed. Such evidence causes the undersigned a high level of concern of what actions the defendant would take if released back into the community.

15. Unlike many cases, there is clear and convincing evidence that this defendant poses a danger to himself, his family and the community should he be released. Given the evidence that he is mentally unstable and in need of a psychiatric evaluation, the release conditions that are available would not be able to control the unexpected violent outburst while on release. Therefore, for the safety of the defendant, his family and the Mobile County Community, it is necessary to require that the defendant be detained.

## Part II - Written Statement of Reasons for Detention

For the reasons stated above, I find that the credible testimony and information submitted during the detention hearing establishes by clear and convincing evidence that there are no conditions of release that will reasonably assure the safety of Mr. Maynard, his family or the community of Mobile County should he be released. The reasons supporting this decision are as follows:

## Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 29th day of June, 2010.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**